UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARTIN STANLEY IVIE,

                            Petitioner,

            v.

RON HAYNES,

                            Respondent.

CASE NO. 3:20-CV-5027-RJB-DWC

REPORT AND RECOMMENDATION

Noting Date: December 11, 2020

The District Court has referred this action to United States Magistrate Judge David W. Christel. Petitioner Martin Stanley Ivie filed his federal habeas Petition ("Petition"), pursuant to 28 U.S.C. § 2254, seeking relief from his state court convictions and sentence. *See* Dkt. 4. The Court concludes Petitioner failed to properly exhaust his state court remedies as to all grounds raised in the Petition. Because Petitioner is barred from pursuing state court remedies, Petitioner has procedurally defaulted on the grounds raised in the Petition. Therefore, the undersigned recommends the Petition be denied and a certificate of appealability not be issued.

# I.    Background

A.  <u>Factual Background</u>

The Court of Appeals of the State of Washington ("state court of appeals") summarized the facts of Petitioner's case as follows:

> On the evening of February 9, 2012, Mason County Sheriff's Deputy William Reed staked out a freshly cut maple tree from which he suspected someone had been stealing wood. The State's expert, Don van Orman, estimated the total retail value of all the wood from the tree at roughly $4,400. Most of the tree had already been removed when Reed arrived, however, and van Orman appraised the wholesale value of the remaining wood, were it cut into three-inch by nine-inch by two-foot "billets" for use in making musical instruments, at $600.
>
> The night was wet, foggy, and extremely dark: Reed described the conditions as "heavy fog mist [sic]" with "zero illumination." Witnesses described the roads in the area as steep, winding, and primitive. At only eight to ten feet wide, the roads are too narrow in most places for cars to pass other vehicles or turn around.
>
> Shortly after 8:00 p.m., a pickup truck arrived at the site and Reed, clad all in black, observed an individual emerge from the truck and begin removing bark from one of the large maple rounds remaining on the ground. After watching the suspect work for about 25 minutes and upon seeing Mason County Sheriff's Deputy Travis Adams arriving in a patrol car, Reed stepped out from behind the tree limbs to get a clearer view of the suspect. Reed immediately recognized the suspect as Ivie, a local resident and woodcutter. Reed ordered Ivie to drop his tools and get on the ground. Ivie threw down his hatchet, but refused to get on the ground. After a tense conversation, Ivie threw his chainsaw in the truck bed and, disregarding Reed's orders, drove away.
>
> Reed pursued on foot, thinking that Adams's approaching vehicle would block Ivie's escape. Before Ivie reached Adams's location, however, Ivie turned his truck around in the entrance to a driveway and proceeded back the way he had come, accelerating in Reed's direction.
>
> Reed continued to advance, pointing his flashlight toward Ivie's oncoming truck and radioing Adams that Ivie had turned around and was coming toward him. Although the narrow roadway afforded only two feet of space on either side of the vehicle, Ivie did not stop as he approached Reed. When the truck came within about five yards, Reed had to jump out of the way to avoid it. Ivie continued down the road, and Adams's marked patrol car, with emergency lights flashing, passed Reed and pursued Ivie.

After a short pursuit, Ivie stopped his truck. As Adams's car slowed, he saw the truck's reverse lights come on, and the truck backed up, hitting the front of the patrol car. Ivie then turned and proceeded up a steep side road. Adams followed Ivie up the side road until it ended at a 90 degree left turn leading to a cleared, flat patch of ground with a trailer on it. Ivie stopped the truck on the landing, and Adams stopped about 20 feet behind him.

Fearing an "ambush situation," Adams got out of his car with his assault rifle, moved to the rear of his car, and began backing down the steep roadway about 30 feet behind his car. At that point Adams stood at the bottom of a fern-covered embankment leading up to the trailer site, well below the level of the trailer and Ivie's truck.

Like Reed, Adams wore a "black jumpsuit" uniform with reflective markings only on the back. His assault rifle had a flashlight attached to the barrel, which would remain on only as long as he touched a pad on the side of the weapon. Adams believed he had the flashlight on and pointed at the truck as he issued commands to Ivie, who remained in his truck, but Adams was not sure that the light remained on the entire time.

Heedless of Adams's commands, Ivie made a sharp left turn onto the level patch of ground, then turned so that his truck faced toward the top of the embankment that separated the trailer site from the road, pointing just behind Adams's car. While Ivie made the turn, Adams moved to within five feet behind his patrol car, then turned to climb up the embankment to the landing. The embankment at that point was high enough that Adams could not see over it until he stepped up onto the slope. Adams stood on the embankment, raised his rifle up, shone the flashlight at the truck, and continued to shout commands. As Adams stood on the embankment, he could see the driver's door of Ivie's truck and Ivie behind the wheel. Adams testified that he then shone his light on the truck and ordered Ivie to get out and to get on the ground. Adams stated that he believed he had the flashlight on the whole time, but "can't say that it didn't blink on and off." At that point, Adams testified Ivie's head "turned, looked right at me and hit the gas and turned in my direction." Ivie completed the turn and accelerated directly at Adams.

The truck then veered slightly to the right, away from the patrol car and in the direction of the road up which Ivie and Adams had come. As Adams moved sideways along the embankment, he held his assault rifle up as high up as he could, attempting to get the barrel on the same level as Ivie, and fired four rounds. The truck straightened out and went off the embankment. As the truck passed him, Adams fired four additional rounds into the driver's side door area. The truck proceeded down the embankment, crossing the road behind Adams's car and crashing into trees and bushes at the bottom of the embankment on the other side of the road.

REPORT AND RECOMMENDATION - 3

Through his police radio, Adams notified dispatch that he had fired shots and believed Ivie had been hit. When Adams reached the truck, he found Ivie still in the driver's seat and seriously wounded. Adams returned to his car, notified dispatch of his coordinates, got his medical kit, and returned to the truck to provide first aid.

Approximately 16 hours after the shooting, two detectives attempted to interview Ivie at Tacoma General Hospital where he was recovering from surgery for multiple gunshot wounds. After a detective read him the *Miranda* advisements, Ivie asked for an attorney, and the detectives shut off the recorder and began to leave. Ivie then called to them to come back to his room, saying that he wanted to speak with them. The detectives started the recorder and again read Ivie the *Miranda* advisements. Ivie agreed to speak with the officers and answered their questions for about 30 minutes.

Although Ivie's eyes were closed throughout the interview and his speech was "somewhat slurred" during the first portion of it, the detectives described Ivie as "alert." In the detectives' opinion, he was not so under the influence of drugs as to be unable to understand the questions or give responsive answers.

. . .

The State charged Ivie with (1) two counts of first degree assault, based on the incidents in which he drove his truck towards Reed and, later, Adams, (2) two counts of second degree assault based on the same conduct, (3) one count of third degree assault, based on the incident in which he backed his truck up into Adams's patrol car, (4) one count of attempting to elude a pursuing police vehicle, and (5) one count of second degree theft, based on Ivie's activities at the felled maple tree on or about February 9. Ivie pled not guilty and proceeded to trial.

Prior to Ivie's testimony and over his objection, the trial court held a hearing outside the presence of the jury and ruled that Ivie had answered the detectives' questions at the hospital voluntarily. The court entered no findings or conclusions in support of this ruling.

At trial the State presented the testimony of Reed and Adams, who described the events as set forth above. The lead investigator testified to the State's crime scene forensic analysis conducted using computer-based crime scene reconstruction technology. Although the testifying investigator did not actually operate the equipment or take the measurements, Ivie did not object to the admission of the images.

Ivie presented evidence disputing certain facts described above, including giving testimony on his own behalf. Although he denied cutting down the maple, Ivie admitted that he had taken some blocks of wood from the site a few days previously, which he sold for $348. He explained that, at the time of the events at issue, he

thought a friend of his owned the property and believed he had the friend's permission to be on the property.

The prosecutor repeatedly impeached Ivie's testimony using the hospital interview on cross-examination, pointing out various inconsistencies between his answers in the hospital and his trial testimony. The court instructed the jury on third degree theft as a lesser degree of second degree theft. The court did not instruct the jury that it must unanimously agree which act constituted the charged theft. The jury returned guilty verdicts on all counts as charged.

Prior to sentencing, Ivie moved for a new trial under CrR 7.5 based on juror misconduct and submitted an affidavit from one of the jurors in support of the motion. The juror stated that she did not believe Ivie committed first degree assault against either Reed or Adams, but that "[t]he foreperson was very pushy" and "did not want to submit questions" to the court. The juror stated that "even though no one said anything I felt pressure from the other jurors as they just wanted me to change my vote so they could all leave," and that she changed her vote based on an erroneous explanation of the law from another juror.

The court denied the motion and entered convictions on all the verdicts, except those for the alternative second degree assault charges, which the court vacated. The court calculated Ivie's offender score as five, based on the current convictions and a 2005 conviction for second degree malicious mischief, a class C felony, which had not washed out due to subsequent misdemeanor convictions. The State presented no evidence of the prior convictions at the sentencing hearing, but Ivie did not challenge the State's representation of his criminal history.

Because the two first degree assault convictions qualified as serious violent felonies under RCW 9.94A.589(1)(b), the court imposed consecutive sentences totaling 222 months' confinement. The court imposed lesser sentences on the other charges, to be served concurrently.

Dkt. 12-1, pp. 19-24 (footnotes and internal citations omitted); *State v. Ivie*, 187 Wash. App. 1008 , at *1-4 (2015).

B. Procedural Background

    1. *Direct Appeal*

Petitioner challenged his Mason County Superior Court ("trial court") convictions and sentence on direct appeal. *See* Dkt. 12-1, pp. 42-87; Dkt. 12-3; Dkt. 12-4. The state court of appeals reversed one count of second-degree theft and affirmed Petitioner's remaining

convictions. Dkt. 12-1, pp. 18-40. The state court of appeals also remanded the case for a new

hearing on Petitioner's offender score. *Id*. Petitioner sought discretionary review by the

Washington State Supreme Court ("state supreme court"). Dkt. 12-4, pp. 45-98. On September

30, 2015, the state supreme court denied Petitioner's petition for review without comment. *Id*. at

p. 100. The state court of appeals issued its mandate on October 8, 2015. Dkt. 31-1, p. 2.

An amended felony judgment and sentence (resentencing after mandate) was entered on

November 3, 2015. Dkt. 12-1, pp. 2-16. Petitioner was resentenced to one count of attempting to

elude a pursuing police vehicle, two counts of assault in the first degree, and one count of assault

in the third degree. *Id*. at p. 2. He was sentenced to total confinement of 213 months. *Id*. at p. 5.

Respondent states no records exist showing Petitioner challenged his amended judgment and

sentence. Dkt. 30.

2. *Personal Restraint Petition*

On October 7, 2016, Petitioner filed a personal restraint petition ("PRP") seeking state

post-conviction relief. *See* Dkt. 12-5, 12-6. After the trial court held a reference hearing and

issued findings, the state court of appeals denied the PRP. Dkt. 12-7, pp. 117-22, 124-30, 132-71.

Petitioner sought discretionary review from the state supreme court, which was denied by the

commissioner of the state supreme court on August 6, 2019. *Id*. at pp. 173-257, 259-304, 306-11.

Petitioner filed a motion to modify the ruling on August 23, 2019 and a supplemental

memorandum in support of the motion to modify on August 28, 2019. *Id*. at pp. 313-42, 344-460.

Petitioner's motion to modify was denied by the state supreme court on November 6, 2019. *Id*. at

p. 462. The state court of appeals issued the certificate of finality on November 14, 2019. *Id*. at p.

464.

While the motion to modify was pending, Petitioner filed a petition for a writ of certiorari in the United States Supreme Court. Dkt. 12-7, p. 466. On January 27, 2020, the Supreme Court denied the petition for a writ of certiorari.

3. *Federal Petition*

On January 13, 2020, Petitioner filed his Petition raising nine grounds for relief. Dkt. 4. On April 6, 2020, Respondent filed, and served on Petitioner, an Answer. Dkt. 12. In the Answer, Respondent asserted Petitioner failed to exhaust Grounds 1-4 and these grounds are now barred from federal review. *Id*. Petitioner filed a Traverse on April 24, 2020. Dkt. 13. The Court determined Petitioner raised additional grounds in the Petition and directed Respondent to file a supplemental answer. Dkt. 23. On August 7, 2020, Respondent filed a Supplemental Answer arguing all grounds raised in the Petition are unexhausted and procedurally barred from federal review. Dkt. 24. Petitioner filed a Supplemental Traverse on August 27, 2020. Dkt. 26. The Court directed Respondent to file additional state court records on October 2, 2020, but declined to accept any additional briefing from the parties. Dkt. 27. On October 16, 2020, Respondent filed the additional state court records. Dkt. 30, 31.

**II.     Discussion**

Respondent maintains Petitioner failed to exhaust all grounds raised in the Petition and is procedurally barred from federal review of these grounds. Dkt. 11, 24.

A. <u>Exhaustion</u>

"[A] state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor*, 404 U.S. 270, 275 (1971). Petitioner's claims will be considered exhausted only after "the state courts [have been afforded] a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). "[S]tate prisoners must

give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985) (petitioner "fairly presented" the claim to the state supreme court even though the state court did not reach the argument on the merits). It is not enough if all the facts necessary to support the federal claim were before the state courts or if a somewhat similar state law claim was made. *Duncan*, 513 U.S. at 365-66 (citing *Picard*, 404 U.S. at 275; *Anderson v. Harless*, 459 U.S. 4 (1982)). Petitioner must include reference to a specific federal constitutional guarantee, as well as a statement of the facts entitling Petitioner to relief. *Gray v. Netherland*, 518 U.S. 152, 162-163 (1996); *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005). Petitioner bears the burden of proving he has exhausted available state remedies, and retains the burden to prove all facts relevant to the exhaustion requirement. *See Rose v. Lundy*, 455 U.S. 509, 520 (1982); 28 U.S.C. § 2254(b)(1)(A).

1. *Grounds Raised in State and Federal Proceedings*

In his direct appeal, Petitioner raised the following claims to the state court of appeals:

1. Insufficient evidence supported his convictions for first degree assault;
2. The trial court erroneously admitted, for impeachment purposes, statements Petitioner made to police while recovering from his wounds in the hospital;
3. The trial court failed to make sufficient findings and conclusions following a hearing on the voluntariness of Petitioner's statements to police in the hospital;
4. The trial court failed to instruct the jury that it must unanimously agree as to which conduct constituted the charged theft;
5. The trial court erred in denying Petitioner's motion for a new trial based on juror misconduct;
6. The State failed to prove Petitioner's prior convictions by a preponderance of the evidence for purposes of calculating his offender score;
7. The prosecutor committed various acts of misconduct, including manufacturing or tampering with evidence and withholding exculpatory evidence;

8. Events occurring during the jury's visit to the scene of the events at issue violated Petitioner's right to an impartial jury;

9. Petitioner did not timely receive disclosure of the evidence used against him and never received full disclosure;

10. Police deprived Petitioner of due process by failing to gather exculpatory evidence;

11. Petitioner is unlawfully imprisoned;

12. The State violated Petitioner's right to confront witnesses against him by presenting exhibits generated using computer-based crime scene reconstruction technology without any testimony from the users regarding the accuracy or reliability of the technology;

13. The State violated Petitioner's right to due process by failing to preserve evidence;

14. The trial court improperly dismissed a juror and excused an alternate juror; and

15. Trial counsel was ineffective for: (a) only meeting with Petitioner on four occasions, (b) failing to obtain and present exculpatory evidence, (3) failing to provide Petitioner with copies of trial materials in advance, and (4) secretly working with the prosecutor to ensure convictions.

Dkt. 12-1, pp. 18, 35-36, 42-87; Dkt. 12-2; Dkt. 12-3.

Following the state court of appeals' decision on direct appeal, Petitioner filed a petition for discretionary review with the state supreme court raising the following grounds:

1. Petitioner's constitutional right to due process was violated because the State failed to present sufficient evidence that the Petitioner had the requisite intent to assault either Deputy Reed or Sergeant Adams;

2. Petitioner's statement given after he had just undergone surgery and was under the influence of narcotic pain medications was improperly admitted at trial;

3. Petitioner's right to an impartial jury was violated when the jury foreperson intimidated and bullied other jurors and failed to pass juror inquiries on to the trial court.

Dkt. 12-4, pp. 45-98.

In his PRP, Petitioner raised the following grounds to the state court of appeals:

1. Petitioner's trial counsel was ineffective because he failed to (a) investigate expert witnesses who would have corroborated Petitioner's testimony and refuted the State's allegations, (b) introduce veterinary records showing Petitioner's dog had suffered gunshot wounds to corroborate Petitioner's testimony, (c) obtain testimony from Petitioner's medical doctor about Petitioner's inability to voluntarily waive his constitutional rights following anesthesia, surgery, and ingestion of opioid medication, (d) present testimony from Petitioner's doctor about the location of Petitioner's bullet wounds to challenge Deputy Adams'

version of the shooting, (e) obtain testimony from Petitioner's doctor about Petitioner's mental and physical condition at the time Petitioner was interrogated at the hospital, (f) introduce photographs of Petitioner's gunshot injuries, (g) present closing arguments that addressed basic exculpatory facts, (h) object to and challenge Detective Simper's testimony regarding the computer-based crime scene reconstruction, and (i) locate and interview Aaron Churchill to corroborate Petitioner's testimony; and

2. Petitioner's conviction was obtained as a result of prosecutorial misconduct because the prosecutor disparaged the role of defense counsel.

Dkt. 12-5-12-6.

The state court of appeals denied Petitioner's PRP and, in his petition for discretionary review filed with the state supreme court, Petitioner raised the following grounds for relief:

1. Trial counsel was ineffective for failing to (a) call a qualified crime scene forensic expert, (b) call Petitioner's treating physician to testify regarding Petitioner's condition when he was interrogated at the hospital, and (c) locate and call a witness who would have testified Deputy Reed tried to suborn perjury against Petitioner in an earlier case.

2. Is it legally permissible for State officials to use spurious evidence that is proven unanimously by professional forensic analysis to be forged in order to "create conviction" of a U.S. Citizen?

3. Is it legally permissible for State officials to conceal abusive police actions by charging and convicting a U.S. Citizen for crimes proven to have not happened?

4. Is it legally permissible for State officials to commit perjury that diametrically opposes police radio call log and professional ballistic forensic records that were openly tampered with in order to falsely frame a U.S. Citizen?

5. Is it legally permissible for State officials to commit perjury by lying under oath and concealing proof of that fraud by withholding exculpatory police records and purposefully introducing perjured witness testimony?

6. Is it legally permissible for police officers to harbor personal grudges throughout a multi-year, documented history of abusive and embarrassing false arrests, and act out upon that frustration by ambushing an unarmed U.S. Citizen in his own private gated community, who is committing no crime, and shooting him and his dog in the back with an automatic assault rifle?

Dkt. 12-7, pp. 173-257, 259-304.

In his Petition, Petitioner raises the following nine grounds for relief:

1. Perjury – State witnesses lied under oath.

2. Suppression of Exculpatory Evidence – ballistic proof dispels State's fables and the State's witnesses lied under oath to reconstruct a myth to conceal their illegal actions.

3.  Ineffective Assistance of Counsel – counsel colluded with the State and refused to challenge the State's deception.

4.  Ineffective Assistance of Counsel - counsel refused to shed light on the State's history of harassment and false arrest of Petitioner.

5.  Is it legally permissible for State officials to use spurious evidence that is proven unanimously by professional forensic analysis to be forged in order to "create conviction" of a U.S. Citizen?

6.  Is it legally permissible for State officials to conceal abusive police actions by charging and convicting a U.S. Citizen for crimes proven to have not happened?

7.  Is it legally permissible for State officials to commit perjury that diametrically opposes police radio call log and professional ballistic forensic records that were openly tampered with in order to falsely frame a U.S. Citizen?

8.  Is it legally permissible for State officials to commit perjury by lying under oath and concealing proof of that fraud by withholding exculpatory police records and purposefully introducing perjured witness testimony?

9.  Is it legally permissible for police officers to harbor personal grudges throughout a multi-year, documented history of abusive and embarrassing false arrests, and act out upon that frustration by ambushing an unarmed U.S. Citizen in his own private gated community, who is committing no crime, and shooting him and his dog in the back with an automatic assault rifle?

2. *Grounds 1 & 2*

In Grounds 1 and 2, Petitioner alleges the State's witnesses lied under oath and concealed exculpatory evidence. Dkt. 4. Petitioner did not present these two grounds on direct appeal or in his PRP. *See* Dkt. 12-1, pp. 18, 35-36, 42-87; Dkt. 12-2; Dkt. 12-3; Dkt. 12-4, pp. 45-98; Dkt. 12-5; Dkt. 12-6; Dkt. 12-7, pp. 173-257, 259-30. As Petitioner did not raise Grounds 1 or 2 to the highest state court on direct appeal or in his PRP, he did not give the state court a full and fair opportunity to determine if a federal constitutional violation occurred when State witnesses allegedly lied under oath and concealed exculpatory evidence. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."); *Ortberg v. Moody*, 961 F.2d 135, 138 (9th Cir. 1992) (finding claims were unexhausted when they were not raised on every level of direct review). Therefore, Grounds 1 and 2 were not properly exhausted.

3.  *Grounds 3 & 4*

In Grounds 3 and 4, Petitioner alleges his trial counsel was ineffective. Dkt. 4, pp. 8, 10. Specifically, Petitioner contends his trial counsel was ineffective when he refused to challenge the State's deception with incontrovertible facts and refused to present evidence related to the State's history of harassment and false arrest of Petitioner. *Id*. Petitioner raised ineffective assistance of counsel claims on direct appeal. *See* Dkt. 12-2; Dkt. 12-3. Petitioner, however, did not raise any claims of ineffective assistance of counsel to the state supreme court on direct appeal. *See* Dkt. 12-4, pp. 45-98. Thus, Petitioner did not exhaust any ineffective assistance of counsel claims on direct review. *See Baldwin*, 541 U.S. at 29.

Petitioner exhausted three ineffective assistance of counsel claims by raising the claims at each level of his PRP. *See* Dkt. 12-5-12-6; Dkt. 12-7, pp. 173-257, 259-304. The first claim alleged that Petitioner's trial counsel was ineffective for failing to call a qualified crime scene forensic expert. Dkt. 12-7, p. 177. The second claim alleged Petitioner's trial counsel was ineffective for failing to contact and call Petitioner's treating physician to testify regarding Petitioner's condition while he was interrogated by police at the hospital. *Id*. The third claim alleged Petitioner's trial counsel was ineffective for failing to locate and call Aaron Churchill to testify that Deputy Reed was prejudiced against Petitioner. *Id*.

"[F]or purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996). In his federal petition, a petitioner can provide additional facts to support a claim considered by the state courts so long as the facts do not fundamentally alter the legal claim. *Poyson v. Ryan*, 879 F.3d 875, 894 (9th Cir. 2018); *Lopez v. Schriro*, 491 F.3d 1029, 1040 (9th Cir. 2007). Thus, a

1  petitioner who presented a particular ineffective assistance of counsel claim can develop

2  additional facts supporting that particular claim. *Poyson*, 879 F.3d at 895; *Moormann v. Schriro*,

3  426 F.3d 1044, 1056 (9th Cir. 2005) "This does not mean, however, that a petitioner who

4  presented any ineffective assistance of counsel claim below can later add unrelated alleged

5  instances of counsel's ineffectiveness to his claim." *Moormann*, 426 F.3d at 1056 (citing

6  *Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992)).

7        In Ground 3, Petitioner alleges his trial counsel colluded with the State, rendering

8  ineffective assistance of counsel. *See* Dkt. 4. Petitioner did not raise this specific claim of

9  ineffective assistance of counsel at each level of his PRP. Thus, Petitioner has not exhausted

10  Ground 3.

11        In Ground 4, Petitioner alleges his trial counsel was ineffective when he refused to shed

12  light on the State's history of harassment and false arrest of Petitioner. Dkt. 4. At each level of

13  the PRP, Petitioner alleged his trial counsel was ineffective for failing to locate and call Aaron

14  Churchill to testify that Deputy Reed had, on a prior occasion, attempted to bribe Mr. Churchill

15  into falsely testifying against Petitioner in a different criminal matter. *See* Dkt. 12-7, p. 177.

16  While the ground raised in the PRP is similar to Ground 4, the two grounds assert different legal

17  and factual claims related to trial counsel's decisions. The PRP focuses on trial counsel's

18  ineffectiveness related to impeaching a specific witness, Deputy Reed. In Ground 4 of the

19  Petition, Petitioner focuses on trial counsel's ineffectiveness related to presenting evidence of the

20  State's general motive and prejudice in bringing the underlying case against Petitioner. As

21  Ground 4 does not assert trial counsel was ineffective for failing to impeach Deputy Reed, the

22  ineffective assistance of counsel claim raised in Ground 4 is not sufficiently related to the

23

24

ineffective assistance of counsel claims exhausted in the PRP. Thus, the Court finds Petitioner has failed to exhaust Ground 4.

For these reasons, the Court finds Grounds 3 and 4 were not properly exhausted.

4. *Grounds 5 – 9*

Petitioner did not raise Grounds 5 – 9 on direct appeal or in his PRP. Dkt. 12-1, pp. 18, 35-36, 42-87; Dkt. 12-2; Dkt. 12-3; Dkt. 12-4, pp. 45-98; Dkt. 12-5; Dkt. 12-6. Petitioner first raised Grounds 5 – 9 when he filed a statement of additional grounds in support of his petition for discretionary review of the state court of appeals' decision denying the PRP. *See* Dkt. 12-7, pp. 259-304. As Petitioner did not raise the allegations contained in Grounds 5 – 9 during his direct appeal or at each level of his PRP, he did not give the state court a full and fair opportunity to determine if a federal constitutional violation occurred. *See Ortberg v. Moody*, 961 F.2d 135, 138 (9th Cir. 1992) (finding claims were unexhausted when they were not raised on every level of direct review); *Casey v. Moore*, 386 F.3d 896, 916-18 (9th Cir. 2004) (finding claim was not fairly presented to the state court when the claim was raised for the first and only time upon petitioning for discretionary review to the state supreme court); *O'Haver v. Ruiz*, 2016 WL 1019264, * 4 (W.D. Wash. Feb. 11, 2016) ("A petitioner must properly raise a habeas claim at every level of the state courts' review."). Thus, Grounds 5 – 9 were not properly exhausted.

B. Procedural Default

Procedural default is distinct from exhaustion in the habeas context. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002). The procedural default rule bars consideration of a federal claim when it is clear the state court has been presented with the federal claim but declined to reach the issue for procedural reasons or it is clear the state court would hold the claim procedurally barred. *Id.* at 1230-31 (citations omitted). If a state procedural rule would now preclude the petitioner from raising his claim at the state level, the claim is considered

"procedurally defaulted" and the federal courts are barred from reviewing the petition on the merits. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *O'Sullivan*, 526 U.S. at 845.

All grounds raised in the Petition are procedurally defaulted because if Petitioner attempted to present these claims in a subsequent PRP, the state court would find the claims barred by Washington State law. Washington State imposes a one-year statute of limitations on filing a PRP or other post-conviction challenges. RCW § 10.73.090. The state court of appeals issued a mandate finalizing Petitioner's direct appeal on October 8, 2015. Dkt. 31-1, p. 2. Petitioner was resentenced on November 3, 2015 and did not file an appeal related to his resentencing. *See* Dkt. 12-1, p. 2; Dkt. 30. The time to file a petition or motion for post-conviction relief expired in 2016, one year after Petitioner's direct appeal became final. *See* RCW 10.73.090(1), (3)(b). As the one-year statute of limitations has passed, Petitioner is barred from filing a subsequent PRP. *See id.* at (1); *see also Shumway v. Payne*, 223 F.3d 982, 988 n. 22 (9th Cir. 2000) (RCW 10.73.090 has been found by the Ninth Circuit to be an independent and adequate state law barring federal habeas review).

Further, under Washington State law, the state court of appeals will not consider a second or successive PRP unless the petitioner certifies he has not filed a previous petition on similar grounds and shows good cause as to why he did not raise the grounds in the previous PRP. *See* RCW 10.73.140. Petitioner has not presented facts which could show good cause for his failure to raise Grounds 1-9 at each level of his PRP. Therefore, all grounds raised in the Petition are also subject to an implied procedural bar because the grounds would be "prohibited by an independent, adequate, and mandatory rule of state procedure, R.C.W. § 10.73.140, making a return to state court futile." *See Bolar v. Luna*, 2007 WL 1103933, at *11 (W.D. Wash. April 10, 2007).

The state court also expressly declined to consider Grounds 5 – 9 because Petitioner attempted to raise these grounds for the first time in a motion for discretionary review. Dkt. 12-7, pp. 311-12. The state supreme court declined to consider the merits of Grounds 5 – 9 because of a state procedural rule – claims not raised before the state court of appeals will not be considered by the state supreme court. *Id*. (citing *In re Lord*, 152 Wash.2d 182, 188, fn.5 (2004)). As the state court expressly denied Grounds 5 –9 on an independent and adequate state procedural rule, these five grounds are barred from federal review. *See Williams v. Ryan*, 2019 WL 4750235, at *3 (D. Ariz. Sept. 30, 2019) (citing *Ylst v. Nunnemaker,* 501 U.S. 797, 801 (1991)) ("If a state court expressly applied a procedural bar, and that state procedural bar is both independent and adequate, a federal habeas court cannot review the claim on the merits.").

Petitioner would be precluded from asserting all the grounds raised in the Petition in the state court; therefore, the grounds raised in the Petition are procedurally defaulted in federal court. *See Coleman*, 501 U.S. at 731-32, 735 n.1; *Casey*, 386 F.3d at 920; *Eisermann v. Penarosa*, 33 F.Supp.2d 1269, 1274 (D. Haw. 1999) ("[I]f a petitioner has never raised his federal claim to the highest state court available and is now barred from doing so by a state procedural rule, exhaustion is satisfied because no state remedy remains available, but the petitioner has procedurally defaulted on his claim.").

C.  Overcoming Procedural Default

The procedural default will be excused and a petitioner will be entitled to federal habeas corpus review if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice[.]" *See Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir. 1998) (citing *Coleman*, 501 U.S. at 750). To establish "cause," a petitioner must show some objective factor external to the defense prevented him from complying with the state's

procedural rule. *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier,* 477 U.S. 478, 488 (1986)).

To show "prejudice," a petitioner "must shoulder the burden of showing, not merely that the

errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and

substantial disadvantage, infecting his entire trial with error of constitutional dimensions."

*United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

Here, Petitioner fails to show some objective factor external to his defense prevented him

from complying with the State's procedural bar rule. Petitioner also fails to show the alleged trial

errors worked to his actual and substantial disadvantage, infecting his entire trial with errors of

constitutional dimensions, and thus has not shown prejudice.

Petitioner, however, asserts he has overcome the procedural bar because he is actually

innocent. Dkt. 13; Dkt. 17; Dkt. 26. Only in an "extraordinary case" may the habeas court grant

the writ without a showing of cause and prejudice to correct a "fundamental miscarriage of

justice" where a constitutional violation has resulted in the conviction of a defendant who is

actually innocent. *Murray*, 477 U.S. at 495–96. To demonstrate he suffered a fundamental

miscarriage of justice, viewing all the evidence in light of new reliable evidence, the petitioner

must show "it is more likely than not that no reasonable juror would have found petitioner guilty

beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537 (2006) (citing *Schlup v. Delo*, 513

U.S. 298, 327 (1995)). "[T]he miscarriage of justice exception is concerned with actual as

compared to legal innocence." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citation

omitted).

Initially, the Court recognizes the entire state court record, including the trial transcript,

was not included in Respondent's Answer. However, as discussed below, Petitioner has not

submitted any evidence that is sufficiently related to the underlying convictions and sentence to

show he is actually innocent. Therefore, the Court finds the entire state court record is not

1  necessary to determine, in this case, if Petitioner has submitted new, reliable evidence, in light of

2  all the evidence, to show he is actually innocent.

3      Petitioner has provided hundreds of pages of narration and his opinion regarding the

4  events giving rise to his convictions and how the evidence should be viewed and interpreted. *See*

5  Dkt. 13, 26. The Court notes the narration was not provided under penalty of perjury and

6  contains vast amounts of speculation and bare conclusions without evidentiary proof. Petitioner's

7  narration and interpretation of the evidence fails to provide evidence sufficient to show a

8  reasonable juror would not have found Petitioner guilty beyond a reasonable doubt.

9      Petitioner also provided the State's ballistic report and photos from the scene of the events

10  at issue in the underlying convictions. *See* Dkt. 13; Dkt. 26. Petitioner contends this evidence

11  shows the State's witnesses lied during their testimony. Petitioner's allegations that the State's

12  witnesses lied under oath does not show he is actually innocent of the crimes of which he was

13  convicted. Petitioner has not provided reliable proof, beyond his interpretation of the evidence,

14  that any witness lied under oath. Further, even if Petitioner provided sufficient evidence to show

15  the State's witnesses lied under oath, this is only a legal sufficiency argument and does not

16  support a factual innocence finding. *See Bianco v. Ryan*, 2017 WL 7000272, at *4 (D. Ariz. Dec.

17  14, 2017) (finding a petitioner's assertion that the state's evidence, absent allegedly perjured

18  testimony, could not lead a rational trier of fact to convict the petitioner did not support factual

19  innocence). Thus, this is not new, reliable evidence showing no reasonable juror would have

20  found petitioner guilty beyond a reasonable doubt.

21      Last, Petitioner's filings contain statements showing: (1) one juror did not think Petitioner

22  committed first degree assault against Deputies Reed or Adams; and (2) Deputy Reed was

23  prejudiced against Petitioner. Dkt. 13, pp. 158-59; Dkt. 26, pp. 110-11, 113-14, 115-17.

24

Petitioner submitted a declaration from Marjorie Steinke, one of the jurors from his trial. Dkt. 26, pp. 113-14. Ms. Steinke stated she did not believe Petitioner committed first degree assault against Deputies Reed and Adams. *Id*. at p. 113. Ms. Steinke did not state that she did not believe Petitioner was innocent of attempting to elude a police vehicle or third-degree assault of Deputy Adams. *See id*. at pp. 113-14. Further, there is no information regarding why Ms. Steinke thought Petitioner did not commit first degree assault. *Id*. For example, she stated her personal opinion was that he was not guilty, but did not state the evidence was insufficient or that she was applying the law correctly. In fact, it appears Ms. Steinke found Petitioner guilty based on the law, even though it was confusing to her. *See id*. at p. 113. Ms. Steinke's declaration fails to show no reasonable juror would have found Petitioner guilty beyond a reasonable doubt. *See Young v. Gipson*, 163 F. Supp. 3d 647, 746 (N.D. Cal. 2015) ("It is not enough that the evidence show the existence of reasonable doubt.").

Petitioner also provided statements from Gilbert Michael Greenwood and Aaron Churchill alleging Deputy Reed was prejudiced against Petitioner. Petitioner first submitted a statement from Mr. Greenwood stating Deputy Reed investigated a theft of Mr. Greenwood's sawmill. Dkt. 26, p. 110. Deputy Reed suspected Petitioner stole the sawmill and, over several years of occasionally speaking to Deputy Reed about the sawmill, Mr. Greenwood thought Deputy Reed had a "severe loathing" for Petitioner. *Id*. During one meeting, Deputy Reed told Mr. Greenwood that Petitioner had been shot and was in jail for a long time, but disappointedly told Mr. Greenwood that Petitioner did not die. *Id*. at p. 111. Mr. Greenwood stated he had no other knowledge of the events giving rise to Petitioner's current convictions and his statement was not made under penalty of perjury. *Id*. As Mr. Greenwood's statement was not made under penalty of perjury, it is not reliable evidence. *See Estrada v. Hedgepeth*, 2010 WL 3069998, at *14 (C.D. Cal. May 26, 2010) (finding post-trial statements supporting actual innocence claim were not

reliable because they were unsworn). Further, Mr. Greenwood has no knowledge regarding the events giving rise to Petitioner's arrest and conviction. Thus, Mr. Greenwood's statement is not new, reliable evidence showing no reasonable juror would have found Petitioner guilty beyond a reasonable doubt.

Petitioner also submitted a declaration from Aaron Churchill. Dkt. 26, pp. 115-17. Mr. Churchill declared, under penalty of perjury, that Deputy Reed approached him and asked him to falsely testify that he had helped Petitioner steal a maple tree. *Id*. In addition to the statement, Mr. Churchill testified in court that Deputy Reed approached him before the events giving rise to the current convictions. *See id*. at pp. 130, 133. Mr. Churchill did not provide any information regarding the events in question which would show Petitioner is actually innocent. As such, Mr. Churchill's declaration does not provide new, reliable evidence showing no reasonable juror would have found Petitioner guilty beyond a reasonable doubt. *See Weaver v. Attorney General of Montana*, 370 F. App'x 869, 870 (9th Cir. 2010) (finding the petitioner's new evidence that tended to undercut the credibility of the state's key witnesses was not sufficient to show it was more likely than not that no reasonable juror would have convicted him)

For the above stated reasons, the statements showing Deputy Reed was prejudiced against Petitioner do not provide new, reliable evidence showing no reasonable juror would have found Petitioner guilty beyond a reasonable doubt. Therefore, the statements are not sufficient to overcome the procedural bar. *See Sawyer v. Whitley*, 505 U.S. 333, 349 (1992) (newly discovered impeachment evidence "will seldom, if ever," establish actual innocence).

In sum, the Court finds Petitioner has not submitted new, reliable evidence showing he is actually innocent of the current convictions and that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt. Therefore, Petitioner has not shown he overcomes the procedural bar.

D. <u>Conclusion</u>

The undersigned finds Petitioner has not exhausted Grounds 1 — 9 and the grounds are procedurally defaulted. As Petitioner has not overcome the procedural default, the Court recommends the Petition be dismissed. *See Casey*, 386 F.3d at 920-21.

## III.    Additional Grounds

Under Rule 2 of the Rules Governing Section 2254 Cases, Petitioner must specify each ground for relief, the facts supporting the ground for relief, and the relief requested. Therefore, the Court finds the only cognizable claims before the Court are Grounds 1 – 9. *See Vrh v. Ndoh*, 2020 WL 2489464, at *1 (E.D. Cal. May 14, 2020) ("Rule 2(c) requires that each ground for relief be clearly stated, along with providing specific factual allegations that support the grounds for relief."). To the extent Petitioner attempted to raise additional grounds in the memorandum filed in support of the Petition, the Court recommends these additional grounds be denied as improperly pled.

## IV.    Evidentiary Hearing

The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen*, 563 U.S. at 181-82. A hearing is not required if the allegations would not entitle Petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*. The Court finds it is not necessary to

1    hold an evidentiary hearing in this case because, as discussed in this Report and

2    Recommendation, Petitioner's grounds may be resolved on the existing state court record.

3    **V.**      **Certificate of Appealability**

4         A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

5    court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

6    (COA) from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability

7    may issue . . . only if the [petitioner] has made a substantial showing of the denial of a

8    constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating

9    that jurists of reason could disagree with the district court's resolution of his constitutional

10   claims or that jurists could conclude the issues presented are adequate to deserve encouragement

11   to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*,

12   529 U.S. 473, 484 (2000)).

13         No jurist of reason could disagree with this Court's evaluation of Petitioner's claims or

14   would conclude the issues presented in the Petition should proceed further. Therefore, the Court

15   concludes Petitioner is not entitled to a certificate of appealability with respect to this Petition.

16   **VI.**      **Conclusion**

17         For the above stated reasons, the Court concludes Petitioner failed to exhaust Grounds 1

18   – 9 and these grounds are procedurally defaulted. The Court also finds an evidentiary hearing is

19   not necessary. Therefore, the Court recommends the Petition be dismissed and a certificate of

20   appealability not be issued.

21         Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

22   fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

23   6. Failure to file objections will result in a waiver of those objections for purposes of de novo

24

1  review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

2  imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

3  December 11, 2020, as noted in the caption.

4       Dated this 25th day of November, 2020.

5

6  _____

7  David W. Christel
   United States Magistrate Judge